UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NAKOTA TRUCKING, LLC,<br><br>                Plaintiff,<br>v.<br><br>HUB INTERNATIONAL MOUNTAIN STATES LIMITED; AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, a foreign corporation; and JOHN DOES I through X, whose true identities are unknown,<br><br>                Defendants. | Case No. 1:22-cv-00041-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant HUB International Mountain States Limited's ("HUB") Second Motion to Dismiss for Lack of Prosecution. Dkt. 53. Plaintiff Nakota Trucking, LLC ("Nakota") opposes the Motion. Dkt. 59.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the Motion to Dismiss.

## II. BACKGROUND

From a factual standpoint, this case is relatively straightforward. Plaintiff Nakota seeks to recover from Defendant insurers HUB and American Empire Surplus Lines Insurance Company ("AESLIC") monies Nakota paid to settle claims arising out of an automobile accident in Rose Rock, Texas, on February 16, 2016, involving one of Nakota's independent contractors. *See generally* Dkt. 1.[1]

From a procedural standpoint, this case is a little more complicated.

Upon removal of this case (Dkt. 1), Defendant AESLIC filed a Motion to Dismiss for lack of personal jurisdiction (Dkt. 2). The Court thereafter reassigned this case to a visiting judge—Senior District Judge Morrison C. England Jr. from the Eastern District of California—based upon the limited judicial resources in the District of Idaho. Dkt. 24. Judge England granted AESLIC's Motion to Dismiss but granted Nakota leave to amend. Dkt. 26. Nakota filed an Amended Complaint. Dkt. 28. AESLIC filed another Motion to Dismiss. Dkt. 29. Judge England again granted AESLIC's Motion. Dkt. 40. He did not grant Nakota leave to amend. *Id*. That was on February 14, 2023.

Six months later, on August 18, 2023, HUB filed a Motion to Dismiss for lack of prosecution alleging Nakota had not taken any action since Judge England's prior order on AESLIC's second Motion to Dismiss. Dkt. 41. Citing personal issues of Counsel (among other things), Nakota averred the delay was not so terrible as to warrant dismissal, and further, that it was "prepared to expeditiously prosecute this case." Dkt. 43, at 6. Without

---

[1] For a more detailed recitation of the facts, *see* Dkt. 26, at 1–3.

waiting for a reply, Judge England denied the Motion to Dismiss for Lack of Prosecution and ordered the parties to submit a joint status report regarding how the case would proceed. Dkt. 45.

The Parties dutifully complied. Dkt. 46. In sum, Nakota outlined its intent to file an interlocutory appeal of Judge England's decision dismissing AESLIC. *Id*. Judge England allowed Nakota 21 days in which to file an interlocutory appeal. Dkt. 49. Nakota so filed. Dkt. 50.

Three months later, on February 29, 2024, the Ninth Circuit dismissed Nakota's appeal because it was procedurally improper. Dkt. 52. Nakota did not fix the procedural defects identified by the Circuit or seek another appeal.

Seven months later, on September 18, 2024, HUB filed its Second Motion to Dismiss for Lack of Prosecution again citing Nakota's lack of any concrete steps to move this case forward. Dkt. 53.

Owing to his then forthcoming retirement, Judge England transferred this case back to the undersigned. Dkt. 54.

Nakota opposed HUB's Second Motion to Dismiss. Dkt. 59. It explains it has been trying to decide whether to seek another interlocutory appeal of Judge England's Order and, further, that any delay is not prejudicial to HUB. *See generally id*. HUB replied, reaffirming its request that the Court dismiss this entire suit for failure to prosecute and that it do so with prejudice. The matter is ripe for review.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or

MEMORANDUM DECISION AND ORDER - 3

to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) … operates as an adjudication on the merits." Similarly, under District of Idaho Local Rule 41.1, "[a]ny civil case in which no action of record has been taken by the parties for a period of six (6) months may, after sufficient notice as determined by the Court, be dismissed by the Court for lack of prosecution."

Courts consider five factors when analyzing whether a case should be dismissed under Federal Rule of Civil Procedure 41(b):

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.

*Wood v. Panther*, 2023 WL 3484161, at *1 (D. Idaho May 15, 2023) (quoting *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir. 2019).

## IV. DISCUSSION

Under the first factor the Ninth Circuit has stated that "the public's interest in expeditious resolution of litigation always favors dismissal." *Wood*, 2023 WL 3484161, at *1 (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). HUB argues dismissal is likewise favored under the second factor because resolving cases always eases the Court's docket.

Nakota does not seriously dispute HUB's first and second arguments, recognizing these two factors are geared towards "not wasting the time and resources of the judicial system." Dkt. 59, at 8. Accordingly, the Court finds the first two factors favor dismissal.

MEMORANDUM DECISION AND ORDER - 4

Nakota devotes a little more attention to the fourth and fifth factors.[2]

Nakota begins by arguing the fourth factor—that public policy favors adjudication on the merits—normally weighs against dismissal but does not carry much weight when a resolution on the merits might not be possible. Dkt. 59, at 10. The Court is not entirely certain what Nakota means. The Court believes Nakota is arguing that, because a resolution on the merits is not possible at this time—in light of another potential appeal—this factor is irrelevant. Even if the Court could deduce the timing of any merits-based decision or appeal, the fourth factor "lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1217, 1228 (9th Cir. 2006). An interlocutory appeal may be warranted in this case. But Nakota already tried that. And when that appeal was rejected *on procedural grounds*, Nakota did not remedy the errors or take other action; it did nothing for seven months. It cannot now claim to want a decision on the merits (or that this factor is irrelevant) when it has been Nakota's own actions that have thwarted movement towards a merits-based decision in this case. This factor weighs in favor of dismissal.

As to the fifth factor—less drastic measures—Nakota argues the Court has not attempted to fashion an alternative to dismissal. Judge England, however, already fashioned an alternative to dismissal by allowing an interlocutory appeal. *See* Dkt. 49. By all accounts, Nakota squandered that opportunity. And at the risk of being redundant,

---

[2] Generally speaking, Nakota's response consists of large block quotes with little analysis to the present circumstances. *See generally* Dkt. 59.

Nakota did not engage with the Court or HUB when its opportunity to appeal did not pan out. It simply sat. The Court understands dismissal is drastic. But when a party has not done anything, except file a faulty appeal, for the better part of two years, the Court is left with few options. This factor also weighs in favor of dismissal.

Nakota focuses primarily on the third factor which examines the risk of prejudice to HUB. Nakota alleges it has been engaged in a "diligent on-going review" regarding whether it can bring another interlocutory appeal based on new caselaw from the United States Supreme Court *and* the fact that its first interlocutory appeal was dismissed on procedural grounds. Dkt. 59, at 2.

Notably, Nakota has not filed any type of motion for interlocutory appeal with this Court or the Ninth Circuit in the six months since it filed its response stating that was its intent.[3] What's more, the Court is not convinced it would allow another interlocutory appeal. Nakota's briefing on the subject is not before the Court. However, the Court has reviewed Judge England's decision and, for what it's worth, agrees with his conclusion. The Court lacks personal jurisdiction over AESLIC. The Court has also reviewed the Supreme Court case Nakota claims to have been studying for the last year—*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023)—and does not see why that case would alter the substance of Judge England's decision here. The Court is not making a firm decision on that question at this time—nor will it in the future as it is dismissing this case. But the

---

[3] To be sure, Nakota may be waiting for the Court to rule on HUB's present motion. But any type of filing from Nakota—related to an appeal or otherwise—would have illustrated it was actually working on this case and trying to move it towards a resolution.

Court's point is that Nakota's entire justification for the lengthy delay here is something that should not have taken over a year to figure out.

What's more, the situation with AESLIC is no reason to wholly abandon this case as it relates to HUB. The Court fully recognizes how insurance contracts work and how monies are transferred and owed between various companies. Thus, it understands that the dismissal of AESLIC directly affects Nakota and HUB. This aside, it does not appear that Nakota did *anything* to advance this case as related to HUB for the last two years. This lack of diligence is concerning to the Court.

Ultimately, the third factor also weighs in favor of dismissal. In addition to having to defend itself in a stagnant lawsuit, HUB is prejudiced by being compelled to defend against allegations regarding an incident that happened over nine years ago, and this prejudice will only increase as time continues to elapse. Memories are fading and any evidence that has not previously been requested or maintained will not be available.

## V. CONCLUSION

Nakota has had multiple opportunities to prosecute this case. Since Judge England's decision granting AESLIC's Second Motion to Dismiss on February 14, 2023, the only action Nakota has taken has been *in response* to HUB's Motions to Dismiss for Failure to Prosecute. In other words, it was not until *the Defendant* did something that *the Plaintiff* did something to move this case forward—if an interlocutory appeal can even be considered a step forward.

The Court appreciates that dismissal—especially with prejudice—is a serious measure. However, it does not appear anything less is appropriate here. Nakota has utterly

failed to prosecute this case. Despite avowals of forthcoming motions, diligent prosecution, and a vested interest in resolution, nothing has happened. For these reasons, the Court will GRANT HUB's Motion to Dismiss for Failure to Prosecute and dismiss this case with prejudice.

## VI. ORDER

1. HUB's Second Motion to Dismiss for Failure to Prosecute (Dkt. 53) is GRANTED.
2. This case is DISMISSED with PREJUDICE and CLOSED.
3. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: April 7, 2025

David C. Nye
Chief U.S. District Court Judge